IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| **LEWIS FITZGERALD DYER,** | ) | **CASE NO. 8:11CV312** |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM** |
| | ) | **AND ORDER** |
| **DENNIS BAKEWELL, Warden, and** | ) | |
| **NEBRASKA STATE PENITENTIARY,** | ) | |
| | ) | |
| Respondents. | ) | |

This matter is before the court on Petitioner Lewis Fitzgerald Dyer's ("Dyer") Petition for Writ of Habeas Corpus ("Petition"). (Filing No. 1.) Respondents filed an Answer (Filing No. 22), Brief on the merits of the Petition (Filing No. 19), Reply Brief (Filing No. 23), and relevant State Court Records (Filing No. 18). Dyer filed a response to Respondents' Answer and Brief (Filing No. 21) and a Brief in support of his Petition (Filing No. 6). This matter is therefore deemed fully submitted.

Liberally construing the allegations of Dyer's Petition, he asserts the following claims:

Claim One: Petitioner was denied due process of law in violation of the Fourteenth Amendment *because:* (1) his conviction was against the greater weight of the evidence; (2) the trial court abused its discretion in finding Petitioner guilty and allowing the August 20, 2009 passenger manifest and hearsay testimony about the passenger manifest; (3) the cumulative effect of the trial court's errors resulted in an unfair trial; and (4) the State used drug courier profile testimony as substantive evidence of Petitioner's guilt ("Claim One").

Claim Two: Petitioner was denied the effective assistance of counsel in violation of the Sixth Amendment *because* his trial counsel failed to: (1) challenge the illegal

          detention, search, and custodial interrogation of Petitioner made by the NSP investigator; (2) file a motion to suppress any evidence obtained from Petitioner and/or his personal belongings based upon the illegal detention, search, and custodial interrogation initiated by NSP; (3) file a motion to suppress based on the NSP's failure to obtain a search warrant prior to opening Petitioner's suitcase; (4) object to the admission of the passenger manifest on the basis of foundation and best evidence; (5) object to the testimony of the NSP investigator and the admission of the handwritten baggage claim check on the basis of hearsay, foundation, and/or authentication; and (6) challenge the fact that the NSP violated Petitioner's Miranda rights ("Claim Two").

Claim Three:  The trial court erred in: (1) admitting the August 20, 2009, passenger manifest for demonstrative purposes; (2) allowing testimony based upon the contents of that manifest in violation of Neb. Rev. Stat. §27-801(3), §27-803(5), and §27-1002,; and (3) admitting nine grams of marijuana, all over the relevance objection of the defense ("Claim Three").

(Filing No. 1.) On initial review, the court dismissed Claim Three because it raised issues of state only and was therefore not cognizable in a federal habeas corpus action. (Filing No. 12 at CM/ECF p. 2.) Thus, only Claims One and Two remain.

## ***BACKGROUND***

On August 28, 2009, after a bench trial, the Douglas County, Nebraska District Court found Dyer guilty of one count of unlawful possession with intent to deliver a controlled substance. (Filing No. 18-10 at CM/ECF pp. 15-17.) The Douglas County District Court thereafter sentenced Dyer to serve a prison term of 8-10 years on that conviction. (*Id.* at CM/ECF p. 24.) Dyer filed a timely direct appeal, in which he raised, among other things, Claim One, Part 1 and Claim Two. (Filing No. 18-6 at CM/ECF pp. 1-39.) Dyer's direct appeal counsel was different from his trial counsel. (Filing Nos. 18-10

2

at CM/ECF p. 1 and 18-6 at CM/ECF p. 1.) The Nebraska Court of Appeals affirmed the conviction and sentence on November 9, 2010, issuing a lengthy memorandum opinion. (Filing No. 18-3 at CM/ECF pp. 1-8.) Dyer filed a petition for further review with the Nebraska Supreme Court, which denied relief to Dyer on December 15, 2010. (Filing No. 18-4 at CM/ECF p. 1.) Details of the Nebraska state court opinions are set forth where necessary in the court's analysis below.

Dyer did not file any request for post-conviction relief in Nebraska state court. Rather, he filed his Petition in this court on September 15, 2011. (Filing No. 1.)

## ANALYSIS

**I.      Claim One, Parts 2-4**

    **A.      Standards for Procedural Default**

As set forth in 28 U.S.C. § 2254(b)(1):

> (1)    An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—
>
>     (A)    the applicant has exhausted the remedies available in the courts of the State; or
>
>     (B)    (I)    there is an absence of available State corrective process; or
>
>              (ii)    circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1)

The United States Supreme Court has explained the habeas exhaustion requirement as follows:

> Because the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts . . . state prisoners must give the

3

> state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.

*O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). A state prisoner must therefore "fairly present" the substance of each federal constitutional claim to the state courts *before* seeking federal habeas relief. *Id.* at 844. In Nebraska, "one complete round" ordinarily means that each § 2254 claim must have been presented in an appeal to the Nebraska Court of Appeals, and then in a petition for further review to the Nebraska Supreme Court if the Court of Appeals rules against the petitioner. *See Akins v. Kenney*, 410 F.3d 451, 454-55 (8th Cir. 2005).

In addition, "fair presentation" of a habeas claim in state court means that a petitioner "must have referred to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue in a claim before the state courts." *Carney v. Fabian*, 487 F.3d 1094, 1096 (8th Cir. 2007), (quotation omitted). Thus, where a petitioner argued in the state courts only that "the trial court misapplied . . . state statutes and case law," the claim is not properly raised and may be procedurally defaulted. *Id.*; *see also Rucker v. Norris*, 563 F.3d 766, 771 (8th Cir. 2009), (finding claim was procedurally barred where the petitioner failed to raise his federal due process claim and "cited no federal authority" in the state courts).

Moreover, where "no state court remedy is available for the unexhausted claim-that is, if resort to the state courts would be futile-then the exhaustion requirement in § 2254(b) is satisfied, but the failure to exhaust 'provides an independent and adequate state-law

4

ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice for the default.'" *Armstrong v. Iowa*, 418 F.3d 924, 926 (8th Cir. 2005), (quoting *Gray v. Netherland,* 518 U.S. 152, 162 (1996)). Stated another way, if a claim has not been presented to the Nebraska appellate courts and is now barred from presentation, the claim is procedurally defaulted, not unexhausted. *Akins*, 410 F.3d at 456 n. 1.

Under Nebraska law, "[a] motion for postconviction relief cannot be used to secure review of issues which were or could have been litigated on direct appeal." *Hall v. State,* 646 N.W.2d 572, 579 (Neb. 2002). In such circumstances, a federal habeas court is precluded from "reaching the merits of the claim." *Shaddy v. Clarke*, 890 F.2d 1016, 1018 (8th Cir. 1989); *see also* *Greer v. Minnesota*, 493 F.3d 952, 957 (8th Cir. 2007), (reiterating that "when a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement," federal habeas is barred because "[i]n such instances, the state prisoner forfeits his right to present his federal claim through a federal habeas corpus petition") (quotations omitted). Even where a claim has been procedurally defaulted, a petitioner is entitled to an opportunity to demonstrate cause and prejudice to excuse the default. *Akins*, 410 F.3d at 456 n. 1.

### B. Dyer's Claim One, Parts 2-4

As set forth above, Dyer pursued a direct appeal and raised Claim One, Part 1 and Claim Two in that appeal. (Filing No. 18-6 at CM/ECF pp. 1-39.) Thus, Dyer failed to properly raise Claim One, Parts 2-4 in the Nebraska state courts. As an initial matter, the court notes that Dyer arguably raised issues similar to Claim One, Part 2 in his direct

5

appeal. (*Id.*) However, he did not raise this claim in the context of a federal due process violation. (*Id.*) As set forth above, in order to "fairly present" his habeas claims, Dyer "must have referred to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue in a claim before the state courts." *Carney,* 487 F.3d at 1096, (quotation omitted); *see also Rucker,* 563 F.3d at 771, (finding claim was procedurally barred where the petitioner failed to raise his federal due process claim and "cited no federal authority" in the state courts). Dyer raised Claim One, Part 2 only in the context of Nebraska state law, and, as such, he failed to "fairly present" it to the Nebraska state courts. Notably, Dyer does not argue otherwise. (Filing No. 21.)

Liberally construed, Dyer simply did not raise Claim One, Parts 2-4 on direct appeal. (Filing No. 18-6 at CM/ECF pp. 1-39.) Further, Dyer did not file any request for post-conviction relief in the Nebraska state courts raising Claim One, Parts 2-4. Regardless, Dyer is procedurally barred from raising Claim One, Parts 2-4 in a post conviction motion at this stage of the proceedings because he could have raised those claims on direct appeal, but failed to do so. *Hall,* 646 N.W.2d at 579. As such, Claim One, Parts 2-4 are procedurally defaulted and the court cannot reach the merits of these claims unless Dyer demonstrates cause and prejudice excusing the default.

**C.     Cause and Prejudice**

To excuse a procedural default, a petitioner must demonstrate either cause for the default and actual prejudice as a result of the alleged violation of federal law, or, in rare cases, that failure to consider the claim will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Although there is no precise definition of what constitutes cause and prejudice, "the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Strickler v. Greene*, 527 U.S. 263, 283 n. 24 (1999); *see also* *Bell v. Attorney Gen. of the State of Iowa*, 474 F.3d 558, 561 (8th Cir. 2007), ("A cause is sufficient to excuse procedural default when it is external to the petitioner, and not attributable to the petitioner.").

The court has carefully reviewed the record in this matter. Liberally construed, Dyer does not argue cause and prejudice to excuse his default of Claim One, Parts 2 and 3. (Filing No. 20.) Indeed, he does not even mention these claims in his Response, and therefore has made no attempt to show cause and prejudice regarding Claim One, Parts 2 and 3. Regarding Claim One, Part 4, Dyer argues that there is "plain error," and the court should therefore excuse his procedural default. (Filing No. 21 at CM/ECF p. 2.) However, Dyer is perhaps unclear regarding the effect of a "plain error" argument on procedurally defaulted claims. It is true that, where a state court conducts a "plain error" review of a defaulted claim, it may or may not "cure[] a procedural default." *Shelton v. Purkett*, 563 F.3d 404, 408 (8th Cir. 2009), (noting, but not resolving, the "unfortunate" and "surprisingly persistent" split of authority within the Eighth Circuit regarding this issue). However, it is not a petitioner's "plain error" *argument* which may cure a procedural default, but a state court's "plain error" *review* which may do so.

Indeed, even assuming that a plain error review cures a procedural default, that argument has no effect here because the Nebraska courts did not conduct a "plain error" review of Claim One, Part 4. There is simply nothing for this court to review, and this court "may not simply conduct [its] own plain error review de novo." *Id.* In short, Dyer's "plain error" argument lacks merit. Further, he has not submitted any argument or evidence which shows that he, or his counsel, were objectively impeded from filing Claim One, Parts 2-4 in his direct appeal. Because Dyer has not demonstrated cause and prejudice to excuse his procedural default, Claim One, Parts 2-4 are dismissed.

## II.    Claim One, Part 1 and Claim Two

### A.    Standard of Review

When a state court has adjudicated a habeas petitioner's claim on the merits, there is a very limited and extremely deferential standard of review both as to the facts and the law. *See* 28 U.S.C. § 2254(d). With regard to the deference owed to factual findings of a state court's decision, a federal court is bound by those findings unless the state court made a "decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Additionally, a federal court must presume that a factual determination made by the state court is correct, unless the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

Further, section 2254(d)(1) states that a federal court may not grant a writ of habeas corpus unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). As explained by the Supreme Court in *Williams*

*v. Taylor*, 529 U.S. 362 (2000), a state court acts contrary to clearly established federal law if it applies a legal rule that contradicts the Supreme Court's prior holdings or if it reaches a different result from one of that Court's cases despite confronting indistinguishable facts. *Id.* at 399. Further, "it is not enough for [the court] to conclude that, in [its] independent judgment, [it] would have applied federal law differently from the state court; the state court's application must have been objectively unreasonable." *Rousan v. Roper*, 436 F.3d 951, 956 (8th Cir. 2006).

Put simply, "[i]f this standard is difficult to meet, that is because it was meant to be." *Harrington v. Richter*, ___ U.S. ___, 131 S. Ct. 770, 786 (2011). The deference due to state court decisions "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Id.* In short, "[i]t bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* This high degree of deference only applies where a claim has been adjudicated on the merits by the state court. *See Brown v. Luebbers*, 371 F.3d 458, 460-61 (8th Cir. 2004), ("[A]s the language of the statute makes clear, there is a condition precedent that must be satisfied before we can apply the deferential AEDPA standard to [the petitioner's] claim. The claim must have been 'adjudicated on the merits' in state court.").

The Eighth Circuit has clarified what it means for a claim to be adjudicated on the merits, finding that:

> AEDPA's requirement that a petitioner's claim be adjudicated on the merits by a state court is not an entitlement to a well-articulated or even a correct decision by a state court. . . . Accordingly, the postconviction trial court's discussion of counsel's performance–combined with its express

9

determination that the ineffective-assistance claim as a whole lacked merit–plainly suffices as an adjudication on the merits under AEDPA.

*Worthington v. Roper*, 631 F.3d 487, 496-97 (8th Cir. 2011), (quotations and citations omitted). The court also determined that a federal district court reviewing a habeas claim under AEDPA must "look through" the state court opinions and "apply AEDPA review to the 'last reasoned decision' of the state courts." *Id.* A district court should do "so regardless of whether the affirmance was reasoned as to some issues or was a summary denial of all claims." *Id.* Similarly, the Supreme Court has held:

> There is no text in the statute requiring a statement of reasons. The statute refers only to a "decision," which resulted from an "adjudication." As every Court of Appeals to consider the issue has recognized, determining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning.

*Harrington,* 131 S. Ct. at 784.

### B. The *Strickland* Standard

Liberally construed, along with Claim One, Part 1, the Nebraska Court of Appeals adjudicated Claim Two on the merits, which relates to the ineffective assistance of Dyer's trial counsel. Claims of ineffective assistance of counsel are reviewed under the two-pronged standard of *Strickland v. Washington*, 466 U.S. 668, 694 (1984). *Strickland* requires that the petitioner demonstrate both that his counsel's performance was deficient, and that such deficient performance prejudiced the petitioner's defense. *Id.* at 687; *see also Bryson v. United States*, 268 F.3d 560 (8th Cir. 2001); *Williamson v. Jones*, 936 F.2d 1000, 1004 (8th Cir. 1991).

10

The first prong of the *Strickland* test requires the petitioner to demonstrate that his attorney failed to provide reasonably effective assistance. *Strickland*, 466 U.S. at 687-88. In conducting such a review the courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The second prong requires the petitioner to demonstrate "a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694; *see also Hubbeling v. United States*, 288 F.3d 363, 365 (8th Cir. 2002). A court need not address the reasonableness of the attorney's skills and diligence if the movant cannot prove prejudice under the second prong of this test. *United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996) (quoting *Cheek v. United States*, 858 F.2d 1330, 1336 (8th Cir. 1988)). Further, as set forth in *Strickland*, counsel's "strategic choices made after thorough investigation are virtually unchallengeable" in a later habeas corpus action. 466 U.S. at 689.

Additionally, the Supreme Court has emphasized that the deference due the state courts applies with vigor to decisions involving ineffective assistance of counsel claims. *Knowles v. Mirzayance*, 556 U.S. 111, 111 (2009), (reversing the Ninth Circuit Court of Appeals and holding that the decision of the California Court of Appeals, that the defendant was not deprived of effective assistance of counsel when his attorney recommended withdrawing his insanity defense during second phase of trial, was not contrary to or an unreasonable application of clearly established federal law; also concluding, among other things, that there was no reasonable probability that, but for counsel's alleged unprofessional error, the result of the proceeding would have been different).

In *Knowles*, the Justices stressed that under the *Strickland* standard, the state courts have a great deal of "latitude" and that "leeway" presents a "substantially higher threshold" for a federal habeas petitioner to overcome. Thus:

> The question "is not whether a federal court believes the state court's determination" under the *Strickland* standard "was incorrect but whether that determination was unreasonable-a substantially higher threshold." *Schriro, supra, at 473, 127 S. Ct. 1933*. And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard. See *Yarborough v. Alvarado,* 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations").

*Id.* at 123.

    **C.    Dyer's Claim One, Part 1 and Claim Two**

        *1.    State Court Findings*

For his Claim One, Part 1, Dyer argues that his conviction was against the greater weight of the evidence in violation of the due process clause of the Fourteenth Amendment. (Filing No. 1.) Liberally construed, Dyer raised this claim on direct appeal, and the Nebraska Court of Appeals considered and rejected it.

The Nebraska Court of Appeals detailed the substantial evidence supporting Dyer's conviction. (Filing No. 18-3 at CM/ECF pp. 4-6.) Summarized, the Nebraska Court of Appeals found that, on January 19, 2009, Nebraska State Patrol officers on duty at the Omaha, Nebraska bus station located a suspicious suitcase on a Greyhound bus going from Las Vegas to Chicago. (*Id.* at CM/ECF pp. 2, 4.) No passenger claimed the suitcase and the officers searched the suitcase, finding nine bundles of what was later determined to be 37 pounds of marijuana. (*Id.* at CM/ECF p. 4.) The officers obtained the passenger

list, also called the manifest, and found only one passenger traveling from Las Vegas to Chicago under the name "Lawrence Taylor." (*Id.* at CM/ECF pp. 4-5.) The officers suspected the name "Lawrence Taylor" was a fictitious name, given that "Lawrence Taylor" is the name of a well-known professional football player. (*Id.* at CM/ECF p. 5.) Further raising the officers' suspicions, the "Lawrence Taylor" ticket was a one-way ticket, purchased with cash only 12 hours in advance, with no passenger telephone listed. (*Id.*) The officers boarded the bus and located the passenger holding a ticket in the name of "Lawrence Taylor," later identified as Dyer. Dyer agreed to step off the bus and answer the officers' questions. (*Id.*)

Prior to questioning him further, the officers read Dyer his *Miranda* rights. After doing so, Dyer agreed to speak further with the officers. (*Id.*) Dyer claimed that the suitcase was not his, that his cousin bought his ticket for him, and refused to answer additional questions. The officers placed Dyer under arrest and searched him, finding a one-way airline ticket from Detroit to Las Vegas departing on January 16, 2009, a bus ticket from Las Vegas to Chicago in the name of "Lawrence Taylor," a note with amounts for various expenses including the cost of the bus ticket, two cellular telephones with chargers, and a small quantity of marijuana. (*Id.*) The officers testified at trial that 37 pounds of marijuana is consistent with distribution and that the chain of custody was properly maintained throughout the investigation and prior to trial. (*Id.* at CM/ECF p. 6.)

Considering all of this evidence, the Nebraska Court of Appeals determined that:

> A conviction will be affirmed, in the absence of prejudicial error, if the properly admitted evidence, viewed and construed most favorably to the State, is sufficient to support the conviction. *State v. Robinson*, 272 Neb. 582, 724 N.W.2d 35 (2006). On this record, the properly admitted evidence,

viewed and construed most favorably to the State, is sufficient to support Dyer's conviction. Therefore, Dyer's first assignment of error is without merit.

(*Id.*, hyperlink added.)

As with Claim One, Part 1, the Nebraska Court of Appeals also denied relief to Dyer on all parts of Claim Two. (*Id.* at CM/ECF pp. 6-10.)[1] Applying *Strickland* and other precedent, the Nebraska Court of Appeals determined:

> Dyer argues that his trial counsel was ineffective in failing to file a motion to suppress the evidence obtained from the suitcase. We disagree. In the instant case, the record shows the [Nebraska State Patrol] officers had probable cause to open the suitcase. [Nebraska State Patrol Officer] Eberle testified that when he was looking through the luggage compartment of the bus, he noticed a newer black suitcase that had no name or identification. The bag also had an aftermarket padlock and a handwritten check-tag. Eberle stated that when he stood the suitcase up on end he heard a large object in the center of the suitcase make a thud that was inconsistent with clothing.
>
> Eberle testified that when the NSP officers monitor buses, they look for buses coming from the southwest corner of the United States, newer luggage, luggage that contains minimal information or fictitious names, and luggage that contains aftermarket padlocks. Eberle testified that all of these items are indicative of controlled substance involvement.
>
> Eberle testified that as the passengers reboarded the bus, he asked each of them if they owned the suitcase, and that none of them claimed the suitcase. Eberle testified he considered the suitcase abandoned property and took it into a back room and opened it. Eberle stated that abandoned bags are searched for security reasons because they are often indicative of someone trying to elude being caught transporting controlled substances or other contraband. Given this evidence, the officers clearly had probable cause to search the suitcase, and therefore, Dyer's trial counsel was not ineffective in failing to file a motion to suppress a search of the suitcase.

---

[1] There is some question as to whether Dyer specifically raised all parts of Claim Two in his direct appeal. The court liberally construes Claim Two and the state-court pleadings and finds that Dyer raised all of Claim Two in the state court. However, to the extent Dyer did not present portions of Claim Two on direct appeal, such claims are procedurally defaulted because he could have raised those claims on direct appeal, but failed to do so. *Hall,* 646 N.W.2d at 579.

14

> Dyer also argues that his trial counsel was ineffective in failing to challenge the illegal search and detention of Dyer. We disagree.
>
> Tier-two police citizen encounters, which constitute investigatory stops, are seizures sufficient to invoke the protections of the Fourth Amendment. *State v. Hedgcock*, 277 Neb. 805, 765 N.W.2d 469 (2009). Because of its less intrusive nature, a tier-two police citizen encounter, or investigatory stop, requires only that an officer have specific and articulable facts sufficient to give rise to a reasonable suspicion that criminal activity is afoot. *Id.* [(citing *Terry v. Ohio*, 392 U.S. 1, 30-31(1968))].
>
> The record shows that the officers detained Dyer because they found a suitcase full of marijuana in the luggage compartment under the bus. The tag on the suitcase indicated that the owner was en route from Las Vegas to Chicago, and Dyer was the only passenger with a ticket that matched this itinerary. Therefore, the officers had reasonable suspicion to detain Dyer.
>
> Dyer also argues that his trial counsel was ineffective in several other respects; failing to object to Eberle's testimony that Dyer had receipts totaling $310 from his trip; failing to allege that the officers violated Dyer's *Miranda* rights; failing to have the marijuana tested; failing to object to the admission of the manifest on the basis of hearsay, speculation, and foundation; failing to object to Eberle's testimony regarding the number of people riding the bus from Las Vegas to Chicago based upon the contents of the manifest; and failing to offer testimony or business records regarding the cellular telephone numbers of Dyer.
>
> We have reviewed the record, and we conclude that Dyer's counsel was not ineffective for failing to take any of the above actions. For these reasons, we conclude that Dyer's trial counsel was not ineffective in any way and performed at least as well as a criminal lawyer with ordinary training and skill. Therefore, Dyer's final assignment of error is without merit.

(*Id.* at CM/ECF pp. 6-7, hyperlinks added.)

The Nebraska Supreme Court also rejected both Claim One, Part 1 and Claim Two in its entirety when it summarily denied Dyer's petition for further review. (Filing No. 18-4 at CM/ECF p. 1.)

    *2. Deference*

  Respondents argue that the foregoing findings of fact and conclusions of law relating to Claim One, Part 1 and Claim Two are entitled to deference under the statutory standard of review that applies to factual and legal conclusions reached by the state courts. Indeed, as set forth above, the court must grant substantial deference to the Nebraska state court decisions. As set forth above, the Nebraska Court of Appeals reviewed all of the evidence and determined, based on *Strickland, Terry*, and other federal and state law, that the evidence was more than sufficient to support Dyer's conviction and that Dyer's trial counsel's performance was not deficient. (Filing No. 18-3 at CM/ECF pp. 1-8.) While the Nebraska Court of Appeals' opinion was perhaps conclusory as to some portions of Claim Two, that court clearly found that Dyer's Fourteenth and Sixth Amendment rights were not violated, and rejected Claim Two in its entirety. Such an adjudication on the merits, while perhaps not "well articulated" or elaborately reasoned, is still entitled to deference. *See Harrington,* 131 S. Ct. at 784.

  Indeed, the court has carefully reviewed the record in this matter and finds that the Nebraska state court decisions are not "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Dyer has not submitted any evidence, let alone clear and convincing evidence, that the Nebraska Court of Appeals, or any other Nebraska state court, was incorrect in any of its factual determinations. 28 U.S.C. § 2254(e)(1). The grant of a writ of habeas corpus is not warranted here because the Nebraska state courts correctly applied federal law. In light of these findings, Dyer's Claim One, Part 1 and Claim Two are also dismissed.

IT IS THEREFORE ORDERED that:

1.  Petitioner Lewis Fitzgerald Dyer's Petition for Writ of Habeas Corpus (Filing No. 1) is dismissed with prejudice; and

2.  A separate judgment will be entered in accordance with this Memorandum and Order.

DATED this 4th day of May, 2012.

BY THE COURT:

s/Laurie Smith Camp
Chief United States District Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.